# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 18-cr-211 (JNE/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Shannon Jackson, | |
| Defendant. | |

On September 12, 2018, Defendant Shannon Jackson ("Jackson" or "Defendant") was indicted on one count of Felon In Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). (Dkt. No. 1.) This matter is before the Court on Jackson's Motions to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. No. 21), to Suppress Statements, Admissions, and Answers (Dkt. No. 23), and to Suppress Evidence Obtained as a Result of Search Warrant (Dkt. No. 28). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

The Court held a motions hearing on October 31, 2018 in which the Government presented a witness and offered five exhibits. (Dkt. No. 31; Dkt. No. 37; Dkt. No. 39.) Jackson filed a post-hearing brief on November 29, 2018 (Dkt. No. 36) and the Government filed its response brief on December 4, 2018 (Dkt. No. 38). For the reasons stated below, the Court recommends that the Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. No. 21) be denied, the Motion to Suppress Statements,

Admissions, and Answers (Dkt. No. 23) be denied, and the Motion to Suppress Evidence Obtained as a Result of Search Warrant (Dkt. No. 28) be granted in part and denied in part.

## I.      FACTUAL BACKGROUND

### A.    Jackson's Arrest

At the October 31 hearing, Deputy Brian Burtus, a Brooklyn Center police officer and member of Hennepin County's Violent Offender Task Force ("VOTF"), testified about the traffic stop and seizure that Jackson contends violated his Fourth Amendment rights and the investigation leading up to Jackson's arrest. (Dkt. No. 37 at 2-3.) Deputy Burtus testified that during the summer of 2018, he was working with a confidential reliable informant ("CRI" or "CI") who advised him that Jackson was in possession of a firearm. (*Id.* at 3-4.) Through his investigation, Deputy Burtus learned that Jackson had a Minnesota Department of Corrections release violator warrant dated June 23, 2018. (Dkt. No. 37 at 6; Dkt. No. 39, Ex. 1.)

Deputy Burtus obtained a warrant to track Jackson's cell phone number, which he obtained from the CRI. (Dkt. No. 37 at 4-5.) On August 8, 2018, Deputy Burtus pinged Jackson's cell phone number, thereby determining his location near 22nd Avenue North and Russell Avenue North in Minneapolis, MN. (*Id.* at 7.) Deputy Burtus then assembled a team of approximately 15-20 officers to arrest Jackson for the felony warrant. (*Id.* at 7, 18-20.) One of the team members, who was waiting in a vehicle near the area where Jackson's cell phone was tracked, reported seeing a person matching Jackson's description exit a residence and get into a vehicle. (*Id.* at 7, 20.) Jackson was

reported being in the passenger seat with a female in the driver's seat.  (*Id.* at 8, 20.)
Deputy Burtus' team executed a box maneuver when the vehicle with Jackson started to
move, which pinned the vehicle with police vehicles from the north and south so that the
vehicle with Jackson could not move.  (*Id.* at 8.)

Shortly after the vehicle with Jackson was pinned, Deputy Burtus approached the
vehicle from the north and saw Jackson in the passenger seat and a female in the driver's
seat.  (*Id.*)  Deputy Burtus handcuffed Jackson, who was cooperative in the arrest.  (*Id.* at
9.)  Deputy Burtus searched Jackson and seized a cell phone from his right front pants
pocket, which was the phone that he had pinged to that location.  (*Id.*)  Deputy Burtus'
team also saw "a gun in plain view in the back seat of the car."  (*Id.*)  Deputy Burtus then
walked over to the vehicle and "could see from the outside of the vehicle that there was a
large black semi-automatic handgun was underneath the driver side seat kind of in the
back seat sticking out."  (*Id.*)  The gun "had an extended magazine on it."  (*Id.*)  The
vehicle was owned by the female driver.  (*Id.* at 24.)  The female driver told Deputy
Burtus that she has known Jackson since grade school and that this incident was the
second time she and Jackson had met up since Jackson's release from prison.  (*Id.*)

**B.    The Cell Phone and Facebook Search Warrants**

After the August 8, 2018 arrest of Jackson, Deputy Burtus obtained search
warrants from a Hennepin County judge for the cell phone that he took from Jackson at
the time of arrest and Jackson's Facebook account.  (Dkt. No. 37 at 13-14, Dkt. No. 39,
Exs. 2, 5.)  Deputy Burtus submitted an Application for Search Warrant for the cell phone

warrant and an Application for Search Warrant and Supporting Affidavit for the

Facebook warrant.  (Dkt. No. 39, Ex. 2 at 1-4, Ex. 5 at 1-5.)

As to the cell phone warrant, the supporting affidavit describes an ongoing gang

investigation by the VOTF and states:

> Your affiant had learned from a Confidential Informant (CI) who has
> provided large amount of information in the recent past on active gang
> members who are carrying weapons and trafficking narcotics. This
> information has been found to be true and correct, and has been corroborated.
> The information provided by the CI has led to many recent search warrants
> being executed where it has led to arrests and convictions of prohibited
> persons with firearms and who are trafficking narcotics.  The CI advised your
> affiant that Shannon Jackson is an [sic] Stick Up Boys (SUB) gang member,
> and has been seen by the CI on multiple occasions within the past two months
> with a firearm.  The CI advised your affiant that they have seen Shannon
> Jackson with a firearm within the past three weeks.

(Dkt. No. 39, Ex. 2 at 2.)  The affidavit describes the arrest and recovery of a firearm

from the vehicle, and then states that Deputy Burtus searched Jackson after the arrest and

"found a silver and black I-phone with pink case [] and took that as evidence."[1]  (*Id.* at 3.)

The affidavit concludes with the following:

> Your affiant knows through training and experience that gang members often
> use cell phones to communicate by various means.  Your affiant knows that
> evidence of these communications maybe found through the examination of
> suspect cellular telephones that could substantially assist your affiant in his
> investigation.   Your affiant also knows through previous training and
> experiences that gang members and prohibited persons in pos[s]ession of
> firearms will often take pictures of themselves and others with their cellular
> phones other holding guns, text about possessing guns, and have other
> information on other prohibited persons and gang members in possession of
> firearms.

---

[1]      The affidavit and warrant also identified the iPhone's IMEI number.  (Dkt. No. 39,
Ex. 2 at 1, 4.)

It is for these reasons, your affiant requests a warrant authorizing a search of the described devices for the described data materials and information.

Based on the information obtained during this investigation, your affiant respectfully requests the court's permission to search the aforementioned electronic devices for the above listed items.

The affidavit described the property and things to be searched for on the

"Black/Silver I-Phone . . . pink case" as:

Any and all files including but not limited to records, notes, names, telephone numbers, photographs, videos, text messages, call log information regarding specific communication to and from the telephone that are electronically stored in the telephone.

(*Id.* at 1.)

The Hennepin County judge issued a search warrant for the cellular phone based on the affidavit and application. (*Id.* at 5-6.) The warrant identified the device to be searched as a "Black/Silver I-Phone . . . pink case" and the property and things to be searched for and seized in a single paragraph as follows: "Any and all files including but not limited to records, notes, names, telephone numbers, photographs, videos, text messages, call log information regarding specific communication to and from the telephone that are electronically stored in the telephone." (*Id.*) The Hennepin County judge found probable cause because:

The property or things above-described constitutes evidence which tends to show a crime has been committed, or tends to show that a particular person has committed a crime.

(*Id.*)

The Facebook affidavit contained a similar description of the VOTF investigation in its probable cause statement. (Dkt. No. 39, Ex. 5 at 3-4.) It then stated:

5

Your affiant had learned from a Confidential Informant (CI) who has provided a large amount of information in the recent past on active gang members who are carrying weapons and trafficking narcotics. This information has been found to be true and correct, and has been corroborated. The information provided by the CI has led to many recent search warrants being executed where it has led to arrests and convictions of prohibited persons with firearms and who are trafficking narcotics. The CI advised your affiant that Shannon Jackson is a Stick Up Boys (SUB) gang member, and has been seen by the CI on multiple occasions within the past two months with a firearm. The CI advised your affiant that they have seen Shannon Jackson with a firearm within the past four weeks. The CI provided a Facebook page that Shannon Jackson is using of https://www.facebook.com/shannon.cannon.98892, [].[2] The CI also advised your affiant that there is evidence of gang activity and weapons possession on Shannon Jackson's Facebook page. The CI stated that Shannon Jackson is using his Facebook to communicate with other SUB gang members about gang activity.

Your affiant queried Shannon Aaron Kaprice Jackson [DOB] which showed he had an outstanding MN Department of Corrections aggravated armed robbery release violation warrant for his arrest (DOC 18OPHF542). Your affiant showed the CI a booking photograph of Shannon Jackson and they were able to confirm that is the same person they know to possess firearms. Your affiant also reviewed the above mentioned open source Facebook page and saw that the user profile pictures matched Shannon Jackson's booking photographs.

(Dkt. No. 39, Ex. 5 at 4.)

After describing the arrest and recovery of a firearm from the motor vehicle, the

affidavit further stated:

Your affiant knows through training and experiences that persons who are involved in criminal gang activity to include illegal weapons possession, often communicate with other persons over Facebook about weapons possession. Your affiant knows through training and experiences that gang members and felons in possession of firearms will often post to other gang members and persons on their Facebook account pictures of these firearms, and communicate about firearms they may be possessing, and current and

---

[2]     The affidavit and warrant included the Facebook ID number. (Dkt. No. 39, Ex. 5 at 1, 4, 6, 7.)

past gang violence. Your affiant believes that this information would be obtained in Shannon Jackson's Facebook history. This information would aid your affiant with this investigation into Shannon Jackson and being a felon in possession of a stolen firearm.

(*Id.* at 5.)

The Facebook warrant seeks "[a]ny and all data" associated with the account, and

then identifies "Particular Things to be Seized" in Section I ("Information to be disclosed

by Facebook") and Section II ("Information to be seized by the government"). (*Id.* at 6-

8.) Section I, the "Information to be disclosed by Facebook," stated:

To the extent that the information is within the possession, custody, or control of Facebook Inc., Facebook Inc. is required to disclose the following information to the government for the TARGET FACEBOOK ACCOUNT: **[ID NUMBER]**

A.      All contact information, including full name, user identification number, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

B.      All Photoprints, including all photos uploaded by the user ID associated with the TARGET FACEBOOK ACCOUNT and all photos uploaded by any user that have that user tagged in them;

C.      All Neoprints, including profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

D.      All other communications and messages made or received by the user, including all private messages and pending "Friend" requests;

E.      All IP logs, including all records of the IP addresses that logged into the account;

7

F.    All information about the user's access and use of Facebook Marketplace;

G.    All privacy settings and other account settings; and

H.    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

(*Id.* at 6-7.)

Section II, the "Information to be seized by the government" listed:

A.    All information described above in Section I that constitutes evidence of conduct that, if committed in the United States, would give rise to violations of 18 U.S.C. §§ 924(j), and 1073, and 21 U.S.C. § 848(e).

B.    Transactional information of all activity of the accounts, including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations;

C.    Business records and subscriber information, in any form kept, pertaining to the account, including applications, subscriber's full name, all screen names associated with the subscriber and/or account, all account names associated with the subscriber, telephone numbers, and addresses;

D.    Records indicating the services available to the subscriber of the accounts; and

E.    Records relating to who created, used, or communicated with the accounts.

Target URL https://www.facebook.com/shannon.cannon.98892
[]

**Including, but not limited to**: Subscriber information, Expanded Subscriber Content, User photos, Group information, Private messages, IP logs, all other stored information available.

(*Id.* at 7-8.)

The application for the Facebook warrant contained virtually identical listings for Sections I and II.  (*See id.* at 1-3.)  The warrant was for the time period beginning "March 13, 2018 to date of subpoena compliance continuing through 30 days post subpoena compliance."  (*Id.* at 8.)

## C.    Deputy Burtus' Post-Arrest Questioning of Jackson

The day after Jackson's arrest, Deputy Burtus met with Jackson at the Hennepin County Jail to take a statement from him.  (Dkt. No. 37 at 10-11.)  Deputy Burtus testified that he read Jackson his *Miranda* rights from a card, that he did not threaten Jackson or make any promises to get Jackson to talk to him, and that Jackson did not ask for a lawyer or for the interview to be terminated.  (*Id.* at 11-12.)  Deputy Burtus also testified that the interview was recorded, and the Government offered an audio file of the interview as Exhibit 3 without objection from Jackson.  (Dkt. No. 37 at 11-12; Dkt. No. 39, Ex. 3.)

## II.    DISCUSSION

Jackson moves to suppress the firearm recovered from the search of the vehicle he was arrested in and all evidence obtained as the result of the execution of the cell phone and Facebook search warrants.  (Dkt. Nos. 21, 28, 36.)  Jackson also moves to suppress all statements, admissions, and answers made following his arrest.  (Dkt. No. 23.)  The Court addresses each motion below.

9

### A.    Motion to Suppress Evidence Obtained as a Result of Search and Seizure of the Vehicle (Dkt. No. 21)

Jackson asserts that he has standing to challenge the seizure of the firearm from the vehicle he was arrested in and seeks its suppression on the ground that the police had no warrant to search the vehicle and no probable cause to seize the firearm.  (Dkt. No. 36 at 2-4.)  The Government argues that Jackson lacks standing to challenge the seizure of the firearm because he was a passenger in a vehicle owned by the female driver and that the gun was properly seized under the "plain view" doctrine.  (Dkt. No. 38 at 2-4.)

### 1.    Jackson Lacks Standing to Challenge the Search-Seizure

Jackson acknowledges that the Supreme Court has held that a "passenger who asserts 'neither a property nor a possessory interest in the automobile' at issue lacks standing to make a Fourth Amendment challenge to a search-seizure of that vehicle."  (*Id.* at 2-3 (citing *Rakas v. Illinois*, 439 U.S. 128, 148 (1978)).  This would seem to end the question of standing, as Jackson was a passenger in the vehicle and has not asserted a property or possessory interest in the vehicle.  However, relying on the Supreme Court's decision in *Byrd v. United States*, 138 S. Ct. 1518 (2018), Jackson contends he has standing to challenge the search-seizure of the vehicle even though "at the time of arrest he was sitting in the passenger seat, alongside the driver-owner" because he allegedly had substantial dominion and control over the vehicle.  (*Id.*)

In *Rakas*, the Supreme Court held that passengers, who "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized," do not have "any legitimate expectation of privacy" and thus cannot challenge a

10

search and seizure of a third party's vehicle. 439 U.S. at 148. In *Byrd*, the Supreme Court stated that: "*Rakas* did not hold that passengers cannot have an expectation of privacy in automobiles." 138 S. Ct. at 1528. Jackson contends the requisite expectation of privacy stems from lawful possession/control and the attendant right to exclude, which may arise from the gratuitous permission of the owner. (Dkt. No. 36 at 3.) Jackson argues that he had substantial dominion and control over the female driver's property, as demonstrated by the fact that he had met with her on at least two occasions, she had picked him up earlier and allowed him into her home, and the arrest had occurred when the two re-entered the vehicle and began to drive away. (*Id.*) According to Jackson, these facts "bear the hallmarks of a couple, where one person does most of the driving and the other does most of the riding." (*Id.*)

Regardless of whether the facts relied on by Jackson demonstrate that Jackson and the female driver were a couple, the Court finds they do not support a conclusion that Jackson had sufficient dominion and control, along with the attendant right to exclude, over the vehicle that would endow Jackson with standing to challenge the search-seizure of the vehicle. *Byrd* does not aid Jackson, as *Byrd* distinguishes *Rakas* because the facts of *Byrd* did "not involve a passenger at all but instead the driver and sole occupant of a rental car." 138 S. Ct. at 158. Nothing in *Byrd* suggests the Supreme Court intended to upset the general rule that "a mere passenger" whose "name did not appear on any ownership documents" does not have a legitimate privacy interest in a vehicle. *United States v. Barragan*, 379 F.3d 524, 530 (8th Cir. 2004); *see also United States v. Crippen*, 627 F.3d 1056, 1063 (8th Cir. 2010) ("As a mere passenger in a vehicle with no

11

legitimate expectation of privacy under the seats where the evidence was found, [Defendant] cannot challenge the search of the truck.").  Here, unlike the defendant in *Byrd*, Jackson was not the sole occupant of the vehicle nor the driver, and the vehicle itself was not a rental car but owned by the female driver.  Accordingly, the Court finds that Jackson lacks standing to challenge the search-seizure of the vehicle in which he was arrested.  The Court therefore recommends denial of Jackson's motion to suppress the evidence obtained as a result of the search-seizure of the vehicle in which he was arrested.

### 2.    The Officers Had Probable Cause to Seize the Firearm

Alternatively, even if Jackson had standing to challenge the search-seizure, the Court recommends denial of the motion because the officers had probable cause to seize the firearm, which was in plain view when the officers arrested Jackson.

Under the plain view doctrine, an officer need not have a warrant to seize evidence if the officer's conduct meets three criteria: 1) the officer must be legitimately at the vantage point where he or she plainly views the evidence; 2) the incriminating nature of the object seized must be immediately apparent to the officer; and 3) the officer must have a legal right of access to the object.  *United States v. Beatty*, 170 F.3d 811, 814 (8th Cir. 1999) (citation omitted).  Under the doctrine, "an object that comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant."  *Horton v. California*, 496 U.S. 128, 135 (1990).

Focusing on the second criterion, Jackson challenges the seizure on the ground that the "incriminating nature" of the firearm "was not immediately apparent."  (Dkt. No.

36 at 4.)  Relying on *United States v. Lewis*, 864 F.3d 937 (8th Cir. 2017), Jackson argues the firearm's incriminating nature was not immediately apparent because a gun itself is not contraband, and the firearm may have been put in the vehicle by someone else (or been the property of the driver).  (*Id.*)  The Court disagrees.  The incriminating nature of "[e]vidence is immediately apparent if there is probable cause to associate the property [seized] with criminal activity."  *United States v. Armstrong*, 554 F.3d 1159, 1163 (8th Cir. 2009) (quotation omitted).  "Probable cause demands not that an officer be sure or certain but only that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of a crime."  *United States v. Weinbender*, 109 F.3d 1327, 1330 (8th Cir. 1997) (quotation omitted).

Here, although Jackson was arrested on a release violator warrant, the officers who saw the firearm in the vehicle had tracked Jackson and stopped the vehicle because they suspected him of being unlawfully in possession of a firearm based on his known status as a felon and the reports from multiple CRIs who had seen Jackson in possession of a gun.  (*See* Dkt. No. 37 at 4-7.)  Thus, this case is distinguishable from *Lewis*, where the officers did not know Lewis was a felon "at that moment" when they seized a gun in Lewis' tattoo shop.  *See Lewis*, 864 F.3d at 944.  Further, Deputy Burtus testified that the firearm "was underneath the driver side seat kind of in the back seat," and this location is corroborated by the photographs taken at the scene before any items were moved.  (*Id.* at 9-10; Dkt. No. 39, Ex. 4.)  Given that the firearm was underneath the driver's seat and accessible to Jackson in the passenger seat, the Court concludes the incriminating nature

of the firearm was readily apparent. *See United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995) ("Officer Pfeffer saw the barrel of a gun sticking out from under the seat. Hidden guns, even badly hidden guns, are by their nature incriminating."); *see also United States v. Kruse*, 603 F. App'x 512, 517 (8th Cir. 2015) (unpublished) ("Upon seeing the gun, officers were authorized to seize it under the plain view doctrine because they were authorized to search the gun case, the firearm was in plain sight, and the firearm's incriminating nature would have been immediately apparent given the officers' knowledge of Kruse's prior drug convictions."). Accordingly, the Court recommends denial of Jackson's motion to suppress the firearm because the officers had probable cause to seize it.

**B.    Motion to Suppress Statements, Admissions, and Answers (Dkt. No. 23)**

Jackson seeks suppression of "all statements, admissions and answers made by the defendant prior to, at the time of, or subsequent to his arrest." (Dkt. No. 23.) After Jackson's arrest, Deputy Burtus interviewed Jackson while he was in custody at Hennepin County Jail. (Dkt. No. 37 at 10-11.) The grounds for the motion are that Jackson's "questioning was not preceded by a full Miranda warning and waiver of those rights, and the statement was otherwise involuntary." (*Id.*) Jackson declined to file any briefing in support of this motion. Nonetheless, the Court has reviewed the audio recording of the questioning and will analyze Jackson's motion.

"[*Miranda*] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and

right to an attorney." *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). Thus, *Miranda* warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda*, 384 U.S. at 444). "Interrogation under *Miranda* includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Hull*, 419 F.3d 762, 767 (8th Cir. 2005) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). A defendant may waive the *Miranda* rights, "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444.

*Miranda* has four requirements that a suspect subject to custodial interrogation must be advised about prior to any questioning. The suspect must be warned that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479. Although the four requirements must be met, the Supreme Court has held that no precise language is dictated. *Florida v. Powell*, 559 U.S. 50, 60 (2010). Rather, "[t]he inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Id.* (alteration in original) (quoting *Duckworth v. Eagan*, 492 U.S. 195, 201 (1989)).

A suspect in custody may waive his *Miranda* rights if: 1) "the relinquishment of the right [was] voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception;" and 2) "the waiver [was] made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The Court considers "the totality of the circumstances in determining whether a suspect's waiver is valid." *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011).

There is no dispute that Jackson was in custody during the interview. The interview was recorded (Dkt. No. 37 at 11; Dkt. No. 39, Ex. 4), and Jackson has not argued that the recording was incomplete or altered. Having reviewed the recording, the Court finds that Deputy Burtus read Jackson his *Miranda* rights, consisting of the four requirements. (Dkt. No. 39, Ex. 4 at 1:42-2:05). Deputy Burtus then asked Jackson if he understood his rights and if he wished to talk to the police. Jackson said he understood his rights and also responded: "Yeah, let's talk." (*Id.* at 1:56, 2:05-2:10.) The Court finds that the "warnings reasonably 'conve[yed] to [Defendant] his rights as required by *Miranda*.'" *Powell*, 559 U.S. at 60. Nothing suggests Deputy Burtus used any force, violence, threats, coercion, or promises to elicit the *Miranda* waiver, and at the end of the interview, Jackson confirmed that he had not been coerced or been given promises or had anything done to him that made him talk to Deputy Burtus. (Dkt. No. 39, Ex. 4 at 24:15-35.) Further, there is no indication that Jackson did not have a full awareness of his decision to waive his *Miranda* rights. Accordingly, upon considering the totality of the

16

circumstances, the Court recommends denying the motion to suppress Jackson's statements.

**C.    Motion to Suppress Evidence Obtained as a Result of a Search Warrant (Dkt. No. 28)**

Jackson challenges the cell phone warrant and the Facebook warrant on their "four corners" as 1) not supported by probable cause because they lack the required supporting factual nexus that evidence of a crime would be found on the phone or Facebook account and 2) as overly broad such that they amount to improper general warrants.  (Dkt. No. 36 at 1.)  Jackson also contends that evidence obtained as a result of the warrants must be suppressed because they are so defective they are not entitled to the "good faith" exception to suppression set forth in *United States v. Leon*, 468 U.S. 897 (1984).  The Government argues that both warrants are supported by probable cause and are not overbroad, but did not address the *Leon* exception in its brief.[3]  (*See generally* Dkt. No. 38.)

**1.    Legal Standard**

The Fourth Amendment provides that "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.

---

[3]    The Government does not dispute that a warrant supported by probable cause was required to search the cell phone and the Facebook account.

### a.    Probable cause requirement

The Eighth Circuit has explained that "[a]n affidavit for a search warrant need only show facts sufficient to support a finding of probable cause." *United States v. Parker*, 836 F.2d 1080, 1083 (8th Cir. 1987).  "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).  "The existence of probable cause depends on whether, in the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (quoting *United States v. Murphy*, 69 F.3d 237, 240 (8th Cir. 1995) (quoting, in turn, *Gates*, 462 U.S. at 238)).

The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach."  *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted).  "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'"  *United States v. Wiley*, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (quoting *Solomon*, 432 F.3d at 827) (alterations in original).  "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'"  *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009) (quoting *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)).  Nevertheless, "[a] magistrate's 'determination of probable cause should

be paid great deference by reviewing courts.'" *Gates*, 462 U.S. at 236 (quoting *Spinelli v.*

*United States*, 393 U.S. 410, 419 (1969), *abrogated on other grounds*, *Gates*, 462 U.S.

213). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a

'substantial basis for ... conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at

238-39 (alteration in original) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

### b.    Overbreadth and particularity

The Fourth Amendment provides that "no Warrants shall issue . . . [unless]

**particularly describing** the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV (emphasis added). The Fourth Amendment's particularity

requirement avoids "a general, exploratory rummaging in a person's belongings."

*Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (citing *Coolidge v. New Hampshire*,

403 U.S. 443, 467 (1971)). This particularity requirement applies to the person suspected

of the offense and the persons or things to be seized. *United States v. Grubbs*, 547 U.S.

90, 96 (2006).

Courts judge compliance with the particularity requirement according to "a

standard of practical accuracy rather than a hypertechnical one." *United States v. Fiorito*,

640 F.3d 338, 346 (8th Cir. 2011) (internal quotation marks omitted). "The [F]ourth

[A]mendment requires that a search warrant's description of the evidence to be seized be

'sufficiently definite so as to enable the officer with the warrant to reasonably ascertain

and identify the place to be searched and the objects to be seized.'" *United States v.*

*Frederickson*, 846 F.2d 517, 519 (8th Cir. 1988) (quoting *United States v. Muckenthaler*,

584 F.2d 240, 245 (8th Cir. 1978)). How specific a warrant must be varies "depending

on the circumstances and the type of items involved." *Frederickson*, 846 F.3d at 519 (internal quotations omitted). As such, courts do not resolve issues concerning particularity "in a vacuum. The court will base its determination on such factors as the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *Fiorito*, 640 F.3d at 346 (internal quotation marks omitted).

### 2. Cell phone warrant

#### a. The cell phone warrant was supported by probable cause

Jackson argues the cell phone warrant was not supported by probable cause because Deputy Burtus' affidavit lacks "specific details concerning the supposed contents of Jackson's phone" and "fail[s] to state any facts articulating a nexus" between the phone and the alleged criminal activity of gun possession. (Dkt. No. 36 at 12.) The Court disagrees. Deputy Burtus stated in the affidavit that he knew "through previous training and experiences that gang members and prohibited persons in pos[s]ession of firearms will often take pictures of themselves and others with their cellular phones other holding guns, text about possessing guns, and have other information on other prohibited persons and gang members in possession of firearms." (Dkt. No. 39, Ex. 2 at 3.) The affidavit explained that the CI, who had provided true and correct information about active gang members in the past, had reported seeing Jackson with a firearm "on multiple occasions within the past two months" and "within the past three weeks," that the CI had identified Jackson as a gang member, and identified, at a minimum, the sought-after contents as pictures of Jackson holding a gun and texts discussing Jackson as possessing

a gun.  (*Id.* at 2-3.)  The affidavit also stated that Jackson had been arrested in a vehicle

from which a loaded weapon was retrieved, and that Jackson had the cell phone at issue

on his person when arrested.  (*Id.*)  Based on these statements about Jackson's gun

possession, Jackson's gang membership, the fact that the cell phone sought to be

searched was on Jackson's person when he was arrested with the gun in the vehicle, and

Deputy Burtus' experience that gang members and "prohibited persons" take photos of

themselves with their phones and text about possessing guns, the issuing Hennepin

County judge had a substantial basis for concluding that there was a fair probability that

evidence of Jackson's possession of a firearm could be found on the cell phone and the

requisite nexus between that crime and the cell phone.  Consequently, the Court finds the

cell phone warrant was supported by probable cause.

### b.    The cell phone warrant was overly broad

Jackson also argues the cell phone warrant was overly broad and violated the

particularity requirement because "it contains no limits to its search" and encompasses

"all data contained in the cell phone."[4]  (Dkt. No. 36 at 15.)  Thus, according to Jackson,

---

[4]    Although courts sometimes treat particularity and breadth synonymously, *see, e.g.*, *Kiesling v. Holladay*, 859 F.3d 529, 537 (8th Cir. 2017) ("The Fourth Amendment's particularity requirement commands that an overbroad warrant is not saved if probable cause is lacking for only some, but not all, of the items to be searched."), technically speaking, particularity and breadth of a warrant are separate issues, *see In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856-57 (9th Cir. 1991) ("Particularity is the requirement that the warrant must clearly state what is sought.  Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.") (citation omitted); *United States v. Adams*, No. 17-cr-64 (DWF/KMM), Dkt. No. 221 (D. Minn. Sept. 17, 2018), *R&R adopted*, 2018 WL 6445547 (D. Minn. Dec. 10, 2018).  However, the parties do not focus on the distinction between the two requirements in their briefing, so the Court does not focus on it here.

the warrant permitted a general exploratory search of all data on the phone "without specifying or limiting the search to evidence of a crime." (*Id.*)  As explained below, the Court agrees that the warrant is overly broad because it does not limit the files for which the cell phone is to be searched and which are to be seized.

The cell phone warrant at issue here authorized the police "to search the above-described device(s)"—i.e., the cell phone—"for the described property and thing(s)" and to "seize and keep said property and thing(s)" where the "described property and thing(s)" are "[a]ny and all files including but not limited to records, notes, names, telephone numbers, photographs, videos, text messages, call log information regarding specific communication to and from the telephone that are electronically stored in the telephone." (Dkt. No. 39, Ex. 2 at 5-6.)  The files to be searched for and seized are not described as those files that constitute evidence of conduct that would give rise to the crime of felon in possession of a firearm, or indeed, any crime.[5]  Rather, the files that the cell phone could be searched for and seized include all photographs, all videos, all text messages, all records, etc.—"[a]ny and all files" electronically stored on the phone.[6]  (*See id.*)

---

[5]    While the warrant stated that the Hennepin County judge found probable cause because the "property or things above-described constitutes evidence which tends to show a crime has been committed, or tends to show that a particular person has committed a crime," the warrant did not identify which crime or crimes would be shown by the sought-after evidence. (Dkt. No. 39, Ex. 2 at 5.)

[6]    The Court recognizes that when executing a valid warrant, depending on the circumstances, an officer may need to search **through** a broad range of electronic files to identify the files that are being searched **for** and seized.  *See United States v. Bishop*, 910 F.3d 335, 336 (7th Cir. 2018) ("This warrant does permit the police to look at every file

This unfettered cell phone warrant is analogous to the warrant in *In re Grand Jury Proceedings*, where the Eighth Circuit found a warrant "authoriz[ing] the FBI to seize all records pertaining to [the party's] bail bonding business for the period January 1, 1976, to the present" to be overly broad.  716 F.2d 493, 497-99 (8th Cir. 1983).  As the Eighth Circuit explained: "The scope of the search was otherwise unlimited: the warrant did not indicate that the documents sought pertained to any specific transactions, did not identify the offenses on which evidence was sought, and did not confine the search to any particular files or categories of documents."  *Id.* at 497.  Thus, this warrant is distinguishable from the warrant in *Fiorito*, which sought "[e]ntire files involving [Fiorito]" where Fiorito was alleged to have engaged in "an ongoing, well-defined equity-stripping scheme" and the broad phrase was followed by "an extensive list of specific documents."  640 F.3d at 346-47 (alterations in original).  It is also distinguishable from the warrant in *United States v. Kilman*, where the warrant sought "any and all data related to the crime of Criminal Sexual Conduct contained within the seized cellular phone."  No. 16-cr-160 (MJD/LIB), 2016 WL 6134546, at *3 (D. Minn. Sept. 6, 2016), *R&R adopted* 2016 WL 6134512 (D. Minn. Oct. 20, 2016).  Here, the cell

---

on his phone and decide which files satisfy the description.  But he is wrong to think that this makes a warrant too general.  Criminals don't advertise where they keep evidence."). In *Bishop*, however, the sought-after items were "any evidence . . . of suspect identity, motive, scheme/plan along with DNA evidence of the crime of Criminal Recklessness with a deadly weapon which is hidden or secreted."  910 F.3d at 336 ("It is enough, these [cited] decisions hold, if the warrant cabins the things being looked for by stating what crime is under investigation.").  In other words, the cell phone warrant at issue here is overly broad in its identification of what is being searched for and seized, not due to the scope of files that are being searched through.

phone warrant places no constraints on the files to be searched for or seized, and thus constitutes an impermissible "blanket search of documents for no particular purpose."[7] *See Fiorito*, 640 F.3d at 346-47.

In response to Jackson's motion, the Government argues that "police were looking for photos, texts, or other information that would be evidence of Jackson's possession of the firearm in question at an earlier time than the date of his arrest. They were also looking for evidence of prior gang activity that would give Jackson a motive to possess firearms." (Dkt. No. 38 at 7.) The Government does not identify any language in the warrant itself that limits the "photos, texts, or other information" to "evidence of Jackson's possession of the firearm in question at an earlier time than the date of his arrest" or "prior gang activity"—nor is any such language to be found in the warrant itself. Thus, the Court understands the Government's argument to rely on the Application for Search Warrant submitted by Deputy Burtus under penalty of perjury.

"'The traditional rule is that the generality of a warrant cannot be cured by the specificity of the affidavit which supports it because, due to the fundamental distinction between the two, the affidavit is neither part of the warrant nor available for defining the

---

[7]    The Court does not find the warrant overly broad because it lists a number of different file types (e.g., photographs, videos, text messages, call log information regarding specific communication to and from the telephone). The Court also does not find Jackson's reliance on *United States v. Winn*, 79 F. Supp. 3d 904 (S.D. Ill. 2015), persuasive. In *Winn*, the issue was that "the police did not have probable cause to believe everything on the phone was evidence of the crime of public indecency," which was alleged to have taken place on a specific date. 79 F. Supp. 3d at 919. Here, the affidavit established multiple sightings of Defendant with a gun over a several-week period. (Dkt. No. 39, Ex. 2 at 2.) And in *Winn*, the files to be seized were those that "constitute[d] evidence of the offense of [Public Indecency]." *Id.*

scope of the warrant.'"  *United States v. Curry*, 911 F.2d 72, 76-77 (8th Cir. 1990) (quoting *United States v. Gill*, 623 F.2d 540, 543 (8th Cir. 1980)).  Accordingly, "the generality of a warrant cannot be cured by the specificity of the affidavit which supports it" unless a two-part standard is met.  *Id.* (quoting *Gill*, 623 F.2d at 543).  "[A] description in the supporting affidavit can supply the requisite particularity if a) the affidavit accompanies the warrant, and b) the warrant uses suitable words of reference which incorporate the affidavit therein."  *Id.* at 78 (quoting *United States v. Strand*, 761 F.2d 449, 453 (8th Cir. 1985) (internal quotation marks omitted)).

Here, the second prong of the *Curry* test is not met.  The cell phone warrant contains no "suitable words of reference which incorporate the affidavit," such as "see attached affidavit" or "as described in the affidavit."  *Curry*, 911 F.2d at 78 (citations omitted).  The only reference to the application in the cell phone warrant is the statement "WHEREAS, the application of Brian Burtus was duly presented and read by the Court, and being fully advised of the premises."  (Dkt. No. 39, Ex. 2 at 5.)  The Eighth Circuit has previously found that such language does not constitute incorporation of an affidavit into a warrant.  *See, e.g.*, *Curry*, 911 F.2d at 78.  Accordingly, the Government cannot rely on the application to overcome the facial overbreadth of the warrant itself.  *See id.* at 77-78; *see also United States v. Thomas*, 263 F.3d 805, 808 (8th Cir. 2001) ("Officer Harris' affidavit in support of his request for the warrant contained the correct address and a specific physical description of the target premises, but it was not incorporated into the warrant with suitable words of reference.  Therefore, the affidavit did not cure the defective warrant.").

25

### c. Suppression of evidence obtained from the cell phone search is recommended

Having found that the cell phone warrant was overly broad in violation of the Fourth Amendment, the Court turns to whether evidence obtained as a result of the warrant should be suppressed. This presents two questions: 1) is the warrant severable such that evidence seized pursuant to valid portions of the warrant need not be suppressed and 2) does the good-faith exception to suppression under *Leon* apply?

As to the first question, the Eighth Circuit has found that a warrant that is overly broad or insufficiently particular "only in part" is severable, and "items seized pursuant to valid portions of the warrant need not be suppressed." *United States v. Timley*, 443 F.3d 615, 622 (8th Cir. 2006) (particularity); *United States v. Coleman*, 909 F.3d 925, 931 (8th Cir. 2018) (overbreadth). "Nevertheless, severance is not always possible. If no portion of the warrant is sufficiently particularized to pass constitutional muster, then total suppression is required." *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982). The parties did not address the question of severability in the briefing, and indeed, given the language of the single paragraph describing the evidence to be searched for and seized, the Court is unable to identify any "portion" that may be severed.[8] Accordingly, the Court concludes that the warrant is not severable.

---

[8] Typically, courts analyze severance when several categories of items to be seized are listed, only some of which are overly broad or insufficiently particular. *See, e.g.*, *Timley*, 443 F.3d at 623 (severing "indicia of occupancy" from "sufficiently particular" categories of marijuana, weapons, and currency); *United States v. Mims*, 567 F. Supp. 2d 1059, 1071-72 (D. Minn. 2008) (severing "insufficiently particular" category of "computer hard drives and disks and the stored data" from "receipts, invoices, notes,

As to the second question, under *Leon*, "'evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid[] will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable.'" *United States v. Houston*, 665 F.3d 991, 994 (8th Cir. 2012) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)).  However, evidence obtained as a result of an unconstitutional search should be suppressed under the following circumstances:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;
>
> (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant;
>
> (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and
>
> (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Houston*, 665 F.3d at 995 (quoting *Proell*, 485 F.3d at 431).

Jackson argues that *Leon* does not apply because "the applications lack probable cause to believe that evidence of criminal activity would be found on [] Mr. Jackson's phone" and therefore there is no nexus between any crime and the phone.  (Dkt. No. 36 at 17.)  However, having found that probable cause exists to support the cell phone warrant,

---

journals, ledgers, and other documents) [that] were specific as to their relationship with controlled substances, firearms, or other possible illegal activities").

this nexus argument does not aid the Court in determining whether the overbreadth of that warrant requires exclusion of evidence obtained as a result of the search.

The Eighth Circuit has found the *Leon* exception may apply to warrants that are insufficiently particular or overbroad. *See, e.g.*, *United States v. Henderson*, 416 F.3d 686, 695 (8th Cir. 2005) (affirming finding that good-faith exception applied to overly broad warrant); *Curry*, 911 F.2d at 77-78 ("[T]he *Leon* exception is not automatically inapplicable in every case where a warrant is found invalid on the ground that it is insufficiently particular."). Relevant factors include, among other things, whether the warrant was issued by an unbiased judge, whether the officer who requested the warrant was the same officer who executed the warrant, whether there was probable cause for the search, whether the application was attached to the warrant, and whether, in the context of the warrant, the officer had a reasonable belief the warrant was limited to the seizure of more particular items. *See, e.g.*, *Henderson*, 416 F.3d at 695; *Curry*, 911 F.2d at 78. The Court is hampered in its analysis of whether *Leon* applies because the Government did not address *Leon* at all in its briefing, and the record does not answer many of these questions. The Court acknowledges that the cell phone warrant was supported by probable cause and there is no evidence it was issued by a biased judge. However, while the receipt attached to the warrant indicates Deputy Burtus collected the cell phone "to be examined at a later date" (Dkt. No. 39, Ex. 2 at 7), there is no evidence as to who actually searched the cell phone and whether that person had the application as well as the warrant or otherwise understood the intended scope of the search. In view of the breadth of the warrant itself and the absence of any evidence or argument regarding whether the

application was attached to the warrant, who executed the search, or the knowledge of the executing officer, the Court cannot find the application of the *Leon* exception appropriate based on the current.  Consequently, the Court recommends suppression of the results of the cell phone search.

> ### 3.    Facebook warrant

> #### a.    The Facebook warrant was supported by probable cause

Jackson argues the Facebook warrant was not supported by probable cause because Deputy Burtus' affidavit lacks "specific details concerning the supposed contents of Jackson's . . . Facebook account, and fail[s] to state any facts articulating a nexus" between the Facebook account and the alleged criminal activity of gun possession.  (Dkt. No. 36 at 12.)  The Court disagrees.  Deputy Burtus stated he learned from a CI, whose information had previously been found to be true and correct, that Jackson is a "Stick Up Boys (SUB) gang member, and has been seen by the CI on multiple occasions within the past two months with a firearm."  (Dkt. No. 39, Ex. 5 at 4.)  Deputy Burtus learned specific details from the CI that linked the Facebook account to Jackson and to criminal activity:

> The CI advised your affiant that they have seen Shannon Jackson with a firearm within the past four weeks.  The CI provided a Facebook page that Shannon Jackson is using of https://www.facebook.com/shannon.cannon.98892, Facebook User Id: [].  The CI also advised your affiant that there is evidence of gang activity and weapons possession on Shannon Jackson's Facebook page.  The CI stated that Shannon Jackson is using his Facebook to communicate with other SUB gang members about gang activity.

(*Id.*)  In his affidavit, Deputy Burtus stated that he "knows through training and experiences that gang members and felons in possession of firearms will often post to

other gang members and persons on their Facebook account pictures of those firearms, and communicate about firearms they may be possessing" and that "persons who are involved in criminal gang activity to include illegal weapons possession, often communicate with other persons over Facebook about weapons possession."  (*Id.* at 5.)

The affidavit identified, at a minimum, the sought-after contents as pictures of firearms and communications discussing Jackson as possessing a gun.  (*Id.*)  The Affidavit also stated that Jackson had been arrested in a vehicle from which a loaded weapon was retrieved.  (*Id.* at 4-5.)  The affidavit also stated that the CI had provided Deputy Burtus with Jackson's Facebook page URL and Facebook ID.  (*Id.* at 4.)  Based on these statements about Jackson's gun possession, that the CI had seen "evidence of gang activity and weapons possession on Shannon Jackson's Facebook page" and that "Shannon Jackson is using his Facebook to communicate with other SUB gang members about gang activity" and Deputy Burtus' experience regarding gang members' use of Facebook, the issuing Hennepin County judge had a substantial basis for concluding that there was a fair probability that evidence of Jackson's possession of a firearm could be found in Jackson's Facebook account and the requisite nexus between the crime being investigated and the Facebook account.  Consequently, the Court finds the Facebook warrant was supported by probable cause.

### b.    The Facebook warrant was not overly broad

Jackson makes two arguments that the Facebook warrant is overly broad.  First, Jackson argues that it seeks "any and all data" such that it is a "generalized warrant" in violation of the Fourth Amendment.  (Dkt. No. 36 at 13.)  Second, Jackson argues that

30

the temporal scope going back to March 2018 is "random and without factual support" and thus overly broad.  (*Id.* at 15.)  The Court addresses each argument.

As to Jackson's first argument—that the Facebook warrant is a general warrant— the Court disagrees because it is limited to information related to the alleged crimes.  The warrant sets forth a two-step process to search and seize the information from the Facebook account.  The warrant first requires Facebook to disclose all information on the Facebook account to the Government.  (Dkt. No. 39, Ex. 5 at 6.)  The warrant then describes the scope of the "Information to be seized to the government" as follows:

> All information described above in Section I that constitutes evidence of conduct that, if committed in the United States, would give rise to violations of 18 U.S.C. §§ 924(j), and 1073, and 21 U.S.C. § 848(e).

(*Id.* at 7.)  The "Information to be seized by the government" also includes information and records identifying the subscriber and information about account activity.  (*Id.*)  The Court finds the scope of the warrant is not overly broad, as there was a fair probability to believe that evidence that Jackson was unlawfully in possession of a firearm, that the account at issue was Jackson's, and that any posts tending to show a crime had been committed were made by Jackson would be found in the sought-after evidence.

The Court also disagrees that the Facebook warrant's temporal scope is overly broad.  The warrant requests Facebook history from March 13, 2018, or five months before the date of the search warrant application.[9]  The affidavit states that the CI told

---

[9]    The Government describes the warrant as seeking Facebook information "90 days prior to the date of the search warrant application."  (Dkt. No. 38 at 5.)  Ninety days, or three months, prior to the August 8, 2018 warrant application would be May 10, 2018,

Deputy Burtus that Jackson "has been seen by the CI on multiple occasions within the past two months with a firearm"—i.e., roughly between June 8, 2018 and August 8, 2018. (*Id.* at 4.)  Thus, the warrant requests Facebook history for three months prior to the earliest date the CI reported seeing Jackson with a firearm.  The Eighth Circuit has upheld a warrant based in part on three-year-old information about the defendant's illegal possession of a firearm, because "the federal gun control statute punishes the *possession* and not merely the *acquisition* of a firearm" and because possessors of illegal firearms tend to retain their weapons for a long period of time.  *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010) (emphasis in original) (quoting *United States v. Waters,* 23 F.3d 29, 36 (2d Cir. 1994)).  The same considerations apply here.  The Court finds that this temporal scope is not overly broad.  Further, because the warrant is limited to evidence of the alleged crime and information showing ownership and use of the Facebook account, the Court finds the temporal scope reasonable and supported by probable cause.

> **c.    Good-faith exception**

As discussed above, the Court disagrees that the Facebook warrant was not supported by probable cause and that the warrant was overly broad.  However, in an abundance of caution, the Court addresses Jackson's *Leon* argument with respect to the Facebook warrant.  As explained below, even if the Facebook warrant was not supported by probable cause, the Court finds that the evidence would not need to be suppressed because the *Leon* good-faith exception applies.

---

not March 13, 2018.  The warrant actually sought information five months before the date of the warrant application.

Jackson argues that "the issuing judge's determination of probable cause was unreasonable" because Deputy Burtus was speculating about what would be on Jackson's Facebook account and the affidavit lacks any facts or details that show a nexus between the alleged crime and Jackson's Facebook account. (Dkt. No. 36 at 17.) Based on its review of the warrant and Deputy Burtus' affidavit, the Court finds that the issuing judge's determination of probable cause was not unreasonable in view of the CI's statements that Jackson had been seen with a firearm over a several-week period and had posted pictures of himself with a firearm on his Facebook page, along with the other statements in the affidavit, including about Deputy Burtus' experience, the CI's identification of the Facebook account in question as Jackson's, and the CI's statements that Jackson's Facebook page had evidence of weapons possession and gang activity with regard to the scope of the warrant. Even if these statements were insufficient to constitute probable cause, they are not speculative or so lacking in indicia of probable cause as to render official belief in its existence unreasonable. Further, any over breadth of the warrant would not render the warrant so facially deficient that no police officer could reasonably presume it was valid. Thus, even if the warrant were not supported by probable cause or was overly broad, the Court concludes that a reasonably well-trained officer would not have known that the Facebook search was illegal despite the issuing judge's authorization, and the officer's reliance on the warrant would have been objectively reasonable. *See Proell*, 485 F.3d at 430. Accordingly, the Court recommends evidence obtained as a result of the Facebook warrant should not be suppressed.

## III.    <u>RECOMMENDATION</u>

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:**

1.  Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. No. 21) be **DENIED**.

2.  Defendant's Motion to Suppress Statements, Admissions, and Answers (Dkt. No. 23) be **DENIED**.

3.  Defendant's Motion to Suppress Evidence Obtained as a Result of Search Warrant (Dkt. No. 28) as it relates to the search of Defendant's cell phone be **GRANTED IN PART AND DENIED IN PART**.

4.  Defendant's Motion to Suppress Evidence Obtained as a Result of Search Warrant (Dkt. No. 28) as it relates to the search of Defendant's Facebook account be **DENIED**.


DATED: January 3, 2019                         <u>*s/Elizabeth Cowan Wright*</u>
                                               ELIZABETH COWAN WRIGHT
                                               United States Magistrate Judge

Filing Objections: This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).